PEOPLE v JACOBS

Docket No. 69282. Submitted March 14, 1984, at Lansing.—Decided
    October 15, 1984.

Dennis Jacobs was convicted of first-degree murder, Genesee
    Circuit Court, Harry B. McAra, J. Prior to trial defendant filed
    notice of his intention to assert an insanity defense and was
    ordered to undergo a psychiatric examination. The insanity
    defense was not asserted at trial, and defendant made a motion
    to exclude statements made by the defendant to the examining
    doctor. The trial court denied the motion, ruling that if defen-
    dant testified his statements to the doctor would be admissible
    for impeachment. Defendant thereafter chose not to testify.
    Defendant appealed, alleging, *inter alia,* that the trial court
    erred in denying the motion to exclude the doctor's testimony.
    *Held:*

    1. Statements made by a defendant during the course of a
    court-ordered mental examination are not admissible upon any
    issue other than the defendant's mental illness or insanity at
    the time of the offense. Therefore, once the defendant failed to
    assert the insanity defense his mental illness or insanity was
    never in issue, and the defendant's statements to the examin-
    ing doctor were inadmissible. The trial court erred in ruling
    that they could be used for impeachment.

    2. The issue is properly raised on appeal even though the
    doctor did not, in fact, testify because the only reason he did
    not testify was that the defendant chose not to testify in light
    of the court's ruling.

    3. Defendant's other allegations of error are without merit.

    Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 109.
    29 Am Jur 2d, Evidence §§ 354, 554.
    Validity and construction of statutes providing for psychiatric
        examination of accused to determine mental condition. 32 ALR2d
        434.
[2] 21 Am Jur 2d, Criminal Law § 79.
[3] 4 Am Jur 2d, Appeal and Error § 165.

1. CRIMINAL LAW — MENTAL EXAMINATION — INSANITY DEFENSE —
   USE OF STATEMENTS.

   A defendant who desires to assert an insanity defense may be
   compelled to undergo a psychiatric examination; having done
   so, any statements made by the defendant to the examiner
   during the examination are not admissible and have no proba-
   tive value at the trial of the case on any issues other than the
   defendant's mental illness or insanity at the time of the alleged
   offense (MCL 768.20a[5]; MSA 28.1043[1][5]).

2. CRIMINAL LAW — MENTAL EXAMINATION — INSANITY DEFENSE —
   USE OF STATEMENTS.

   Statements made by a defendant to a psychiatrist during a court-
   ordered mental examination are not admissible at trial where
   the defendant chooses not to assert an insanity defense and
   therefore never puts his sanity in issue (MCL 768.20a[5]; MSA
   28.1043[1][5]).

3. CRIMINAL LAW — MENTAL EXAMINATION — IMPEACHMENT — AP-
   PEAL.

   A defendant who has undergone a court-ordered mental examina-
   tion, who then decides not to assert an insanity defense, whose
   motion to preclude the use for impeachment purposes of any
   statements he made during the mental examination is denied,
   and who then decides not to testify may, on appeal, raise the
   issue of the propriety of the denial of his motion.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prose-cuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Kim Donald Shaw,* for defendant on appeal.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

E. KEYES, J. Defendant, Dennis Jacobs, was found guilty of first-degree (felony) murder, MCL 750.316; MSA 28.548, following a jury trial. Defen-dant appeals his conviction as of right. The pri-mary issue raised on appeal is whether the trial

* Circuit judge, sitting on the Court of Appeals by assignment.

court erred in ruling that, should defendant testify at trial, a doctor from the Center for Forensic Psychiatry would be allowed to testify in rebuttal as to statements made by defendant during his examination at the center.

Prior to trial, defendant filed notice of his intention to assert the defense of insanity. Pursuant to MCL 768.20a; MSA 28.1043(1), the trial court ordered defendant to undergo an examination relating to his claim of insanity at the Center for Forensic Psychiatry. Defendant was examined at the center by Dr. Stock.

Defendant did not assert an insanity defense at trial. At the close of the prosecutor's case, defendant made a motion to exclude allegedly incriminating statements made by defendant to Dr. Stock. Defendant claimed that, under MCL 768.20a(5); MSA 28.1043(1)(5), these statements were only admissible on the issue of defendant's insanity. Therefore, defendant sought a ruling from the court that, should he testify, Dr. Stock would not be allowed to testify in rebuttal as to statements made by defendant during his examination at the center. The court ruled that, if defendant testified, the statements he made during his examination would be admissible for impeachment. Consequently, defendant declined to testify at trial.

A defendant who desires to assert an insanity defense may be compelled to undergo a psychiatric examination. *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971). In *People v Brown,* 399 Mich 350; 249 NW2d 693 (1976), the Supreme Court held that although statements made by a defendant in the course of a court-ordered examination are not admissible on the issue of guilt, *People v Stevens,* 386 Mich 579; 194 NW2d 370 (1972), the statements would be admissible for impeachment purposes as prior inconsistent statements.

Since the Supreme Court's decisions in *Martin* and *Stevens,* the Legislature enacted MCL 768.20a; MSA 28.1043(1). Section (5) states:

"(5) Statements made by the defendant to personnel of the center for forensic psychiatry, to other qualified personnel, or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issues other than his or her mental illness or insanity at the time of the alleged offense." MCL 768.20a(5); MSA 28.1043(1)(5).

In *Brown, supra,* the Court specifically noted that subsequent to the defendant's trial the Legislature had enacted MCL 768.20a; MSA 28.1043(1). The Court stated: "This statute in no way influenced our decision in this case. This defendant, tried nearly three years prior to the enactment of this statute, cannot avail himself of its protection." *Brown,* p 357. Thus, the Court in *Brown* did not consider MCL 768.20a(5); MSA 28.1043(1)(5) in reaching its decision.

On its face, MCL 768.20a(5); MSA 28.1043(1)(5) precludes the use at trial of defendant's statements made in the course of a court-ordered psychiatric examination upon any issue other than his mental illness or insanity at the time of the offense. This statute reflects a clear legislative intent that such statements not be used in a proceeding on the issue of guilt, but rather that they be used solely on the issue of sanity. In the instant case, defendant did not assert an insanity defense at trial. Defendant's mental illness or insanity at the time of the offense was never in issue. Therefore, the statements made by defendant to Dr. Stock were inadmissible.

MCL 768.20a; MSA 28.1043(1) is similar in sub-

stance and design to Federal Rule of Criminal Procedure 12.2 which states in pertinent part:

"(c) Mental Examination of Defendant. In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to a mental examination by a psychiatrist or other expert designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony."

In *United States v Leonard,* 609 F2d 1163 (CA 5, 1980); *reh den,* 617 F2d 295 (1980), defendant was ordered to undergo a psychiatric examination following his notice of intention to assert an insanity defense. Subsequently, however, defendant stipulated to his mental competency at the time of the offense, and therefore waived the issue of insanity. At trial, the prosecutor was permitted to impeach defendant with statements made by defendant during his psychiatric examination. Holding that impeachment through the use of defendant's statements made during his psychiatric examination was impermissible, the Court stated:

"[T]he purpose of Rule 12.2(c) is to secure the defendant's Fifth Amendment right against self-incrimination. * * * Because sanity at the time of the commission of the alleged offense bears heavily on the issue of guilt, it implicates Fifth Amendment concerns. Thus, there is a sharp distinction between the use of the defendant's statements made during a court-ordered psychiatric examination on the issue of sanity and the use, before the 'fact finders' (here a jury), of incriminat-

ing statements made during such psychiatric examination on the issue of guilt and before guilt had been determined. * * * Therefore, central to the court's authority to order a defendant to submit to a psychiatric examination is what we believe to be a clear understanding that the function of statements obtained during the examination is limited to the sanity issue.

"There is another obvious rationale behind the rule. Both the government and the defendant may need the assistance of expert testimony on the issue of sanity. In many cases, psychiatrists would not be able to obtain reliable testimony unless they were free to inquire into the prior conduct of the defendant, including his participation in the criminal activity with which he is charged. Moreover, the psychiatric inquiry cannot succeed unless the defendant cooperates; a defendant's mental condition would not be discovered in many instances unless the psychiatrist can engage in a candid conversation with the defendant about it. Therefore, it may be appropriate and even in some cases necessary for the psychiatrist, *when testifying on the issue of sanity,* to disclose the criminal activity related to him by the defendant." *Leonard, supra,* pp 1165-1166 (emphasis in original, citations and footnote omitted).

We believe, based on the clear language of MCL 768.20a(5); MSA 28.1043(1)(5) and the persuasive reasoning of *Leonard,* that the trial court erred in ruling that defendant's statements, made during his court-ordered psychiatric examination, could be used for impeachment. We reject the prosecutor's argument that since Dr. Stock never testified defendant's claim is without legal significance. The reason Dr. Stock did not testify is that defendant chose not to testify in light of the trial court's ruling. Where defendant's motion to preclude his impeachment by evidence of prior convictions is denied and he subsequently decides not to testify, he may nevertheless raise the issue on appeal. See *People v Crawford,* 83 Mich App 35, 40; 268 NW2d 275 (1978); *People v McCartney,* 60 Mich App 620,

624; 231 NW2d 472 (1975). The same principle applies in the present case. Accordingly, we reverse the ruling of the trial court and remand for a new trial. The remainder of defendant's contentions will be briefly discussed below.

Defendant asserts that the trial court erred by allowing the prosecutor to refresh the memory of defendant's mother with a statement she made to the police shortly after the offense and to question her concerning inconsistencies between her earlier statement and her trial testimony. We find no error. *People v Alphus Harris,* 56 Mich App 517; 224 NW2d 680 (1974); *People v Dozier,* 22 Mich App 528; 177 NW2d 694 (1970).

Defendant argues that the trial court erred in allowing the prosecutor to elicit from various witnesses statements made by the decedent describing his condition, asking that the police and an ambulance be called, and stating he was shot after having given the robber all of his money. We again find no error. The statements clearly satisfied the excited utterance exception to the hearsay rule. MRE 803(2). See *Browning v Spiech,* 63 Mich App 271; 234 NW2d 479 (1975); *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366 (1965).

Defendant also claims that the trial court erred by describing the duties of the officer in charge of the case to the prospective jurors. Defendant's argument is without merit. The trial court merely provided a thumbnail sketch of the officer's duties, and in no way pierced the veil of judicial impartiality or unduly influenced the jury. *People v Rogers,* 60 Mich App 652, 233 NW2d 8 (1975); *People v Flansburgh,* 24 Mich App 470; 180 NW2d 373 (1970).

Lastly, defendant argues that the trial court erred by refusing to give Michigan Criminal Jury Instructions 16:1:01 and 16:1:03, relating to

whether the act of defendant was the cause of death or whether death was the result of grossly erroneous medical treatment. Defendant's theory of defense was that he did not rob or shoot the deceased. Defendant offered no testimony regarding negligent medical treatment or that subsequent negligent medical treatment intervened to cause death. As there was no evidence to warrant giving the requested instructions, the trial court did not err in declining to give them. *People v Trilck,* 25 Mich App 634; 181 NW2d 674 (1970).

Reversed and remanded for a new trial.