## PEOPLE v BELANGER

Docket No. 86738. Submitted January 14, 1987, at Detroit. Decided
March 16, 1987. Leave to appeal applied for.

Christopher Belanger was convicted following a jury trial in the
Wayne Circuit Court of breaking and entering, armed robbery
and assault with intent to rob while armed. The trial court,
Maureen P. Reilly, J., sentenced defendant to from ten to
fifteen years imprisonment on the breaking and entering con-
viction and to from ten to forty years imprisonment on the
remaining convictions, the sentences to run concurrently. De-
fendant appeals raising three issues.

The Court of Appeals *held:*

1. The trial court erred in ruling that defendant could be
impeached with evidence of a prior felony-firearm conviction
without disclosure of the underlying felony conviction. The
prejudicial effect of the evidence outweighed its probative value
and had the effect of forcing defendant to elect not to testify on
his own behalf.

2. A reasonable juror could have interpreted the trial court's
instruction on intoxication as shifting the burden of proof to
the defendant. Such error is sufficiently serious to constitute a
miscarriage of justice. Counsel's failure to object to the instruc-
tion does not waive the error where manifest injustice results.

3. No error was found in regard to the admission of testi-
mony by Dr. Mogy, a psychologist from the Michigan State
Center for Forensic Psychiatry, who had examined defendant
concerning his announced insanity defense since the Court of
Appeals was unable to conclude that defense counsel had
totally abandoned a diminished capacity defense and was only
asserting an intoxication defense throughout trial.

Reversed and remanded for a new trial.

CRIMINAL LAW — WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS
— FELONY-FIREARM.

A defendant may not be impeached with evidence of a prior

REFERENCES

Am Jur 2d, Evidence § 327.

Construction and application of Rule 609(a) of the Federal Rules of
Evidence permitting impeachment of witness by evidence of prior
conviction of crime. 39 ALR Fed 570.

felony-firearm conviction alone without disclosure of the underlying felony conviction; a defendant may not be impeached with evidence of unspecified prior felony convictions.

*John R. Minock,* for defendant.

Before: R. M. MAHER, P.J., and SHEPHERD and ALLEN,* JJ.

PER CURIAM. Charged with breaking and entering, MCL 750.110; MSA 28.305, armed robbery, MCL 750.529; MSA 28.797, and assault with intent to rob while armed, MCL 750.89; MSA 28.284, defendant was found guilty by a jury of all charges. Sentenced on June 25, 1985, to from ten to fifteen years in prison on the breaking and entering conviction and to from ten to forty years imprisonment on the remaining convictions, the sentences to run concurrently, defendant appeals as of right raising three issues, one of which (Issue III) we find constitutes grounds for reversal and a new trial.

On April 4, 1984, Michael and Connie Jackson were awakened at 5:30 A.M. in the bedroom of their home in Ecorse by defendant who threatened Michael with a knife. Defendant was wearing leather gloves, had a bandanna around his face and appeared to Michael to be intoxicated or drugged. After taking a watch and two rings from Michael, defendant ordered Connie to give him her gold chain. Mrs. Jackson purposely dropped the chain and when defendant bent over to pick it up, Mrs. Jackson hit defendant over the head with a television set. The police were called and defendant was taken by Sergeant Michael Mitchell to the Ecorse police station where defendant was interrogated by Lieutenant Ruben Trevino. The

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

officers testified at trial that while they could smell alcohol on defendant, he did not appear intoxicated.

At the beginning of trial, defense counsel announced that he was going to withdraw an insanity defense that counsel had earlier said he would raise, and, instead, would rely on the defense of diminished capacity. In his opening statement to the jury, defendant counsel stated that he would raise the defense of intoxication.

Defense counsel also moved in limine to exclude references to defendant's prior criminal convictions during trial. At issue were three convictions: a breaking and entering conviction in 1980, a felony-firearm conviction in 1980 and a felonious assault conviction in 1983. The trial court ruled that the 1980 breaking and entering conviction was similar to the breaking and entering charge in the present case, and it would therefore be more prejudicial than probative to allow the jury to learn about this conviction. The court also ruled that introduction of evidence of the prior felonious assault conviction would be more prejudicial than probative as to the veracity of defendant, because the present case involved a charge of assault with intent to rob while armed and because there were two complaining witnesses who could testify against defendant.

However, the trial court ruled that evidence of the prior felony-firearm conviction could be admissible for purposes of determining defendant's credibility as a witness. Although the court noted that the crime of felony-firearm does not address the issue of defendant's honesty as a witness, the court ruled that evidence of the conviction could be admissible under MRE 609 and that felony-firearm was dissimilar enough from the present case, be-

cause the present case involved the use of a knife by defendant.

In defense, defendant called four witnesses who had been with defendant earlier on the night of the breaking and entering. Jackie Jude, defendant's girlfriend, testified that defendant came to her house that night at about 2:30 A.M. with Jamie Witt, and that defendant was so drunk that Jamie had to help defendant down the steps when he left. Alfred Witt, Jamie's father, testified that earlier that night defendant had come to his home to visit his son, Jamie, and his daughter, Dawn, and that when defendant left he was in such a drunken stupor he could hardly walk. Jamie and Dawn gave similar testimony.

In rebuttal to defendant's claim of diminished capacity, the prosecution called Dr. Robert Mogy, a psychologist from the Michigan State Center for Forensic Psychiatry, who had examined defendant concerning his announced insanity defense. Mogy testified that if defendant had consumed as much alcohol as he claimed he would have been staggering and highly confused. He did not believe that defendant had a diminished capacity to form a criminal intent. The rubber gloves and bandanna which defendant wore over his face were significant indicators in Mogy's opinion that defendant's behavior was well organized. Based on this fact together with testimony of the officers who observed defendant shortly after the offense and the fact that there was no evidence of prior mental illness, Mogy concluded that defendant had the capacity to form an intent on the morning of the crime.

On cross-examination defense counsel asked Dr. Mogy whether diminished capacity could be brought about by the voluntary ingestion of liquor or drugs. Defense counsel also asked whether the

definition of diminished capacity requires that a person not know what they are doing.

Although trial was held in June, 1985, the trial court gave the following instruction taken from CJI 6:1:02:

> Consider whether the defendant appeared intoxicated or under the influence of drugs, and what effect, if any, such condition had on his mental faculties. Evidence of drug intoxication or drunkenness may be used in defense of the charges made here today, and all such evidence should be weighed in determining whether or not the defendant had the necessary specific intent to commit the crimes charged.

No objection was made to the instruction. However, on April 20, 1985, CJI 6:1:02 was revised to add the following:

> (3) the prosecution has the burden of proving beyond a reasonable doubt that the defendant could and did form the specific intent to commit the crime(s) of [state specific intent crime(s) charged].

On appeal three issues are raised: (i) whether the testimony of the forensic psychologist, Dr. Mogy, was admissible when intoxication, not insanity, was raised as a defense; (ii) whether the jury instruction on intoxication improperly shifted the burden of proof to defendant; and (iii) whether the trial court erred in ruling that defendant could be impeached with evidence of the prior felony-firearm conviction. The third issue raised presents a question of first impression. We address the issues in inverse order. The prosecution has not submitted a brief.

IMPEACHMENT WITH EVIDENCE OF A PRIOR FELONY-
FIREARM CONVICTION

The question of whether a defendant may be impeached with evidence of a prior felony-firearm conviction alone without disclosure of the underlying felony conviction has never been decided in Michigan. Nothing in MRE 609 specifically precludes such impeachment. However, it is well-established that a defendant may not be impeached with evidence of unspecified prior felony convictions. *People v VanDorsten,* 409 Mich 942; 298 NW2d 421 (1980); *People v McBride,* 413 Mich 341, 345; 319 NW2d 535 (1982). As stated by Chief Judge DANHOF in *People v Garth,* 93 Mich App 308, 317-318; 287 NW2d 216 (1979):

> Felony convictions cover a wide range of activities from advocating polygamy, MCL 750.441; MSA 28.696, through perjury in a court of law, MCL 750.422; MSA 28.664, to felony murder; MCL 750.316; MSA 28.548. Because many felonious activities have little if any relationship to veracity, a prior felony conviction is not in itself a reliable indication of lack of credibility. Without knowledge of the nature of the felony, the trier of fact has no probative evidence to consider, merely an amorphous suggestion that defendant's past is blameworthy.

The felony-firearm statute, MCL 750.227b; MSA 28.424(2), makes it a felony for a person to have in his possession a firearm at the time he commits or attempts to commit a felony. By allowing evidence of a prior felony-firearm conviction, the court necessarily informs the jury that the defendant has committed an underlying undisclosed felony. Thus, the jury is invited to speculate on the nature of the felony. This is the very conduct which the Supreme Court sought to preclude in *VanDorsten*

and *McBride, supra.* Also, in this case the felony-firearm conviction had little relationship to defendant's veracity. Without knowledge of the nature of the underlying felony, the jury had no probative evidence to consider on the issue of defendant's credibility, but instead had only an amorphous suggestion that defendant was a "bad man."

For the foregoing reasons we find that the prejudicial effect of evidence of the prior conviction outweighed its probative value. Further, the trial court's ruling had the effect of forcing defendant to elect not to testify on his own behalf. Accordingly, this Court must reverse and remand for a new trial. *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979); *People v Jackson,* 391 Mich 323, 333; 217 NW2d 22 (1974); *People v Crawford,* 83 Mich App 35, 39-40; 268 NW2d 275 (1978).

Our decision in this regard makes it unnecessary to decide whether reversal is required on defendant's remaining issues. Because the questions may be raised again on retrial and because guidance from this Court will be helpful to the parties and the trial court, the following observations are added to this opinion.

### INSTRUCTIONS OF INTOXICATION

While defendant did not object to the jury instruction on intoxication given by the trial court, defendant claims it improperly shifted the burden of proof to the defendant. In *United States v Corrigan,* 548 F2d 879 (CA 10, 1977), an instruction on the issue of self-defense, basically similar to the instruction given in the instant case on intoxication, was found to have improperly shifted the burden of proof to the defendant. The Tenth Circuit reasoned that a juror untrained in the law might conclude that a party who raises an affirma-

tive defense bears the burden of persuasion on that issue.

> We are not saying the burden of proof should be reiterated in each separate instruction. In the case of an affirmative defense, however, the potential for misinterpretation is too great to permit ambiguity. An affirmative defense admits the defendant committed the acts charged, but seeks to establish a justification or excuse. In the absence of clear instructions, it is not unlikely that the jury would infer that the government has borne its burden and that it is up to the defendant to establish his justification. This is contrary to the standard of proof beyond a reasonable doubt on all elements of the offense; the defense of self-defense is directed toward negating the element of criminal intent. [548 F2d at 883.]

The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). A jury instruction which shifts the burden of proof to the defendant violates this principle. *Mullaney v Wilbur,* 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975). The burden of proof in a criminal case may not be placed on the defendant and instructions of the trial judge susceptible of any such interpretation are erroneous. *People v Clark,* 340 Mich 411; 65 NW2d 717 (1954); *People v Hudson,* 123 Mich App 624; 333 NW2d 12 (1982). Whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction. *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979).

In the instant case, as in *Corrigan, supra,* a reasonable juror could have interpreted the in-

struction as shifting the burden to defendant, an error which we believe is sufficiently serious to constitute a miscarriage of justice. Counsel's failure to object to the instruction does not waive the error where manifest injustice results. *People v Camon,* 110 Mich App 474, 484-486; 313 NW2d 322 (1981); *People v Duncan,* 402 Mich 1, 15; 260 NW2d 58 (1977). On retrial any possibility of error requiring reversal on this issue can be avoided by use of the current and updated CJI 6:1:02.

### TESTIMONY OF THE FORENSIC PSYCHOLOGIST

Notice of the intention to assert the defense of insanity or diminished capacity triggers a compelled psychiatric examination by personnel of the Michigan State Center for Forensic Psychiatry. MCL 768.20a(2); MSA 28.1043(1)(2). However, statements made by the defendant to personnel at the center are not admissible and have no probative value except on the issue of insanity or diminished capacity. MCL 768.20a(5); MSA 28.1043(1)(5). If defendant later elects not to assert the defense of insanity or diminished capacity, statements made to a psychiatrist during a court-ordered examination are not admissible. *People v Jacobs,* 138 Mich App 273, 276; 360 NW2d 593 (1984). A diminished capacity defense is equivalent to an insanity defense. *People v Mangiapane,* 85 Mich App 379, 395; 271 NW2d 240 (1978).

In closing argument and in rebuttal, the prosecution relied heavily on the testimony of Dr. Mogy to argue that defendant was not intoxicated. On appeal, defendant argues that since intoxication is not a form of insanity or diminished capacity (*People v Cummins,* 45 Mich App 601; 207 NW2d 150 [1973]; *People v Savoie,* 419 Mich 118; 349 NW2d 139 [1984]), and since at the beginning of

trial defense counsel withdrew the defense of insanity, the trial court erred reversibly when it allowed Dr. Mogy's statements in evidence.

The problem is that defendant obfuscates his intent to totally withdraw insanity as a defense. When defendant announced he was withdrawing the defense of insanity, he simultaneously announced his intent to argue the defense of diminished capacity. Although later, in his opening statement made before the people called the first witness, defense counsel stated he would use the defense of intoxication to show that defendant lacked the requisite intent to commit armed robbery, counsel did state he was also abandoning the defense of diminished capacity. The fact that no objection was taken to Dr. Mogy's testimony strongly suggests that at that point in the trial defense counsel intended to put in proofs on both intoxication and diminished capacity. Counsel's cross-examination of Dr. Mogy, regarding whether diminished capacity could result from a voluntary ingestion of drugs or liquor and whether diminished capacity requires that a person not know what he or she is doing, is further proof that counsel had not abandoned the defense of diminished capacity.

An appellant will not be allowed to obtain reversal of an unfavorable outcome in the lower court by reliance on an error he precipitated. *Bufford v Brent,* 115 Mich App 146; 320 NW2d 323 (1982), lv den 417 Mich 881 (1983). An appellant will not be permitted to take advantage of errors he himself caused. *Olweean v Wayne Co Road Comm,* 26 Mich App 121; 182 NW2d 58 (1970), aff'd 385 Mich 698; 190 NW2d 108 (1971). Defense counsel continued throughout trial to mistakenly interchange the defense of intoxication with the defense of diminished capacity.

Because we are unable to conclude that defense counsel had totally abandoned a diminished capacity defense and was only asserting an intoxication defense throughout trial, we are unable to find error on Issue I in defendant's brief. However, upon remand and a new trial defense counsel will be required to decide in advance whether to serve a notice in writing of an intention to assert the defense of diminished capacity pursuant to MCL 768.20a(1); MSA 28.1043(1)(1), or whether to assert the defense of intoxication only. If defense counsel elects to defend on the grounds of intoxication only and serves no notice under the statute, then upon retrial the testimony of Dr. Mogy concerning whether he believed defendant was intoxicated will be prohibited.

Reversed and remanded for a new trial.